O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DIANDRA DOUGLAS<br><br>      Plaintiff,<br><br>      v.<br><br>PATRICK N. SMITH, et al.,<br><br>      Defendants. | Case No. SACV 09-1365-DOC (MLGx)<br><br>MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR WRIT OF ATTACHMENT |

I. **Factual and Procedural Background**

On March 12, 2010, Plaintiff Diandra Douglas filed an application for right to attach order and writ of attachment against Defendants, Patrick N. Smith ("Patrick"), his wife Susan Smith ("Susan"),[1] and QRI, LLC ("QRI"), a California limited liability company.[2] On April 2, 2010,

---

[1] The parties note that divorce proceedings are currently pending between Defendants Patrick and Susan Smith. In addition, no one contests the authenticity of the declarations filed in the dissolution proceedings (*In re Marriage of Smith*, Santa Barbara Superior Court Case No. 1304692), which are attached as Exhibits 1-3 to the Declaration of Andrew S. Pauly ("Pauly Decl."), attorney for Plaintiff.

[2] QRI was formed by Patrick and Susan Smith for the purpose of jointly owning and acquiring property. Patrick and Susan Smith are co-members of QRI, and Patrick is the sole manager. Pauly Decl. ¶ 6, Ex.

Patrick and QRI filed an opposition to Plaintiff's application and Susan filed a separate opposition. On April 14, 2010, Plaintiff filed a consolidated reply to Defendants' oppositions. A hearing was held on the applications on April 20, 2010.

The underlying facts are largely undisputed by the parties. On May 1, 2008, Plaintiff and Defendant QRI entered into a written contract under which QRI leased Plaintiff's real property located at 936-940 Hot Springs Road, Montecito, California (the "Premises"), at the rental rate of $40,000 per month. Declaration of Diandra Douglas ("Douglas Decl.") ¶¶ 6, 7, Exs. 1, 3. For $2 million, to be paid in two $1 million installments, QRI also acquired an option to purchase the property (the "Option Agreement"). Douglas Decl. ¶ 4, Ex. 1. Patrick and Susan Smith both signed a document in which they guaranteed QRI's obligations under the contract. QRI made the first $1 million option payment in May 2008, but did not make the second $1 million option payment, which came due on May 1, 2009. Douglas Decl. ¶ 4. QRI also stopped making the monthly rental payments in May 2009. Douglas Decl. ¶¶ 12, 13. Plaintiff seeks a writ of attachment in the amount of $1,341,666.67[3] against the property of each of the Defendants.[4]

//

//

---

1 ¶ 6, Ex. 2 ¶ 10.

[3] This total includes the second $1 million option payment that QRI failed to make, prejudgment interest in the amount of $91,666.67, and $250,000 in estimated attorneys' fees and costs.

[4] The Court has already granted Plaintiff's application for writ of attachment against Defendant QRI, LLC (Docket No. 49).

## II. <u>Applicable Law</u>

Federal Rule of Civil Procedure 64 provides for prejudgment attachment and other prejudgment remedies. A United States district court, addressing a motion for prejudgment attachment in a diversity action, generally applies the law of the state in which the district court sits. *See* Fed. R. Civ. P. 64; *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 436-437 (1974); *United States v. Van Cauwenberghe*, 934 F.2d 1048, 1063-64, n. 13 (9th Cir. 1991). Therefore, in this case, the Court will apply the California prejudgment attachment statutory scheme. California Code of Civil Procedure §§ 481.010, et seq.

A prejudgment writ of attachment may be issued to secure the amount of the claimed indebtedness, as well as the estimated costs and allowable attorney's fees. Cal. Code Civ. Proc. § 482.110(b). The burden is on the moving party to establish entitlement to a writ of attachment. *Loeb and Loeb v. Beverly Glen Music, Inc.*, 166 Cal.App.3d 1110, 1116 (1985); *see also* Legislative Committee Comment to 1974 Addition to Code of Civil Procedure § 484.090 (stating that the "plaintiff has the burden of proving (1) that his claim is one upon which an attachment may be issued, and (2) the probable validity of such claim"). Since California's attachment law is purely statutory, it must be strictly construed. *Kemp Bros. Constr., Inc. v. Titan Elec. Corp.*, 146 Cal.App.4th 1474, 1476 (2007). Under California law, an attachment may issue only if the claim sued upon is (1) a claim "for money ... based upon a contract, express or implied;" (2) of a "fixed or readily ascertainable amount not less than $500;" (3) that is either unsecured or secured by personal property; and (4) that is a "commercial claim." Cal. Code Civ. Proc. § 483.010.

### III. Plaintiff Has Met the Statutory Requirements for a Writ of Attachment Against Defendants Patrick and Susan Smith

There is no dispute between the parties that Plaintiff's claim is (1) for money based upon a contract, the option agreement; (2) of a fixed or readily ascertainable amount not less than $500, i.e., the $1 million dollar option payment that became due on May 1, 2009; and (3) the obligation is not secured by any interest in real property. Cal. Code Civ. Proc. § 483.010, Douglas Decl. ¶ 4. The only real dispute between the parties is whether Plaintiff's claim against Defendants Patrick and Susan Smith is a "commercial claim" within the meaning of the statute.

#### A. The Claim Against Patrick and Susan Smith Arises Out of Their Conduct of a Trade, Business or Profession

Commercial claims against individuals must arise out of the defendant's conduct of a trade, business or profession. Cal. Code Civ. Proc. § 483.010(c); *Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson*, 197 Cal.App. 3d 1, 4 (1987). What constitutes a "trade, business or profession" has yet to be definitively construed. Generally, it means an activity carried on "for the purpose of livelihood or profit on a *continuing* basis." *Nakasone v. Randall*, 129 Cal.App.3d 757, 764 (1982) (emphasis added).

Attachment of the assets of individual guarantors of corporate obligations or business debts is proper if the guaranty arose out of the conduct of the guarantor's business, that is, if "the guarantee of the primary obligor's debt sued upon is part and parcel of an activity which occupies the time, attention and effort of the guarantor for the *purpose of livelihood or profit on a continuing basis*." *Advance Transformer Co. v. Super. Ct.*, 44 Cal.App.3d 127, 144 (1974) (emphasis

added) (finding attachment proper where a husband and wife guaranteed a promissory note as payment for business materials of a closely held corporation.) Accordingly, attachment may issue against an individual guarantor who is: (a) in the business of extending credit generally, or (b) so involved in the primary obligor's business that the guaranty is made to further the guarantor's livelihood or profit on a continuing basis. *Id.* It is immaterial whether the individual guarantor is dependent upon the business for his livelihood or devotes little time to it. *Id.* at 135.

In determining whether attachment was appropriate against the guarantors in the *Advance Transformer* case, the court distinguished between conduct demonstrating only occasional investment activity and that involving "carrying on an activity for the purpose of livelihood or profit on a continuing basis." The court held that a writ of attachment may issue to a natural person if any one of the following three circumstances is established: (1) a corporation has habitually been provided with operating capital through the medium of such guarantees by the defendant, or (2) the obligation sued upon has resulted from an extension of credit in reliance upon defendant's continuing guarantee, or (3) the defendant has extensively occupied himself in the management of the primary obligor on a continuing basis and has a major stake in its success. *Id.* at 144. "In short, if the sum total of the circumstances justifies the conclusion that the guarantor occupied himself to a substantial degree and on a continuing basis in promoting his own profit through provision of credit or management to the primary obligor, a guarantee executed in the course of such activity may properly be considered an obligation arising out of the conduct of the guarantor's business." *Id.*

The Smiths contend that Plaintiff's claim does not arise out of their involvement in a business conducted on a "continuing basis." Def.'s Opp., Mem. of P. & A. at 8. Patrick first argues that he is not in the "business of" providing corporate guarantees. However, Defendants do not cite any authority that holds that the only persons who can be subject to writs of attachment are those who are engaged in the business of providing guarantees. Neither the structure nor the language of section 483.010 support that construction. Moreover, by his own admission, Patrick has guaranteed real property-related obligations on numerous occasions for up to hundreds of millions of dollars. Pauly Decl., Ex. 1, ¶ 13. For example, Patrick states that he "had personal guarantees which exposed [him] to liabilities of at least $35,000,000 and as much as $177,000,000 (or more)." *Id.* In addition, Patrick states that he "had personal guarantees extending to Bank of America (a total loan of $110,000,000) and Hypo Bank (a total loan of $524,000,000)." *Id.*

The declarations submitted by the Smiths state that they are not in the "trade, business or profession" of providing guarantees in general or guaranteeing residential leases and options to buy in particular. Declaration of Patrick Smith ("Patrick Decl.) ¶¶ 9-15; Declaration of Susan Smith ("Susan Decl.") ¶ 4. Rather, they argue, Patrick's business ventures are commercial and retail real estate development, not related to leasing private residences. Patrick and Susan argue that their guaranty of the option and the lease executed on behalf of QRI was merely an isolated incident and was not part of an ongoing business. They contend that QRI was merely a means for them to hold joint title to their personal residences.

However, the record before the Court demonstrates that QRI was

and is an active, ongoing business whose purpose was to generate profits that would provide a stream of income to Patrick and Susan. Under the express language of Patrick and Susan's Premarital Agreement, QRI was formed in order to "allow [the Smiths] to acquire joint property with [their] respective separate property interests and have those acquisitions, and [their] financial relationship, governed by business law, not family law. To this end, [the Smiths] formed QRI, LLC, for the purpose of owning and acquiring joint property. [The Smiths] agreed that [they] would be co-members of QRI, LLC, (each as to a 50% share as [their] sole and separate property and that [Patrick] would be the sole manager, serving without compensation." Pauly Decl. ¶ 6, Ex. 1 ¶ 6. "Under [the Premarital Agreement], a new entity entitled QRI, LLC was to be formed and all of [their] existing business interests and all future business interests that either of [them] would acquire would automatically become the property of QRI, LLC, in which each of [them] held a 50% interest." Pauly Decl. ¶ 7, Ex. 2 ¶ 10.

Further, under the terms of the First Amendment to Premarital Agreement executed by the Smiths and effective as of September 7, 2007, the Smiths agreed to the following clause:

> 5.3 **Investment Opportunities**. Patrick and Susan shall confer with one another regarding the acquisition of any new Capital interest by QRI LLC. In accordance with the foregoing, (i) Patrick shall first offer all such investment opportunities to the parties together through QRI LLC, and if declined by Susan, then Patrick shall have the right to invest his Separate Property to acquire any such Capital interest, individually, as his Separate

7

|  |  |
|---|---|
| 1 | Property; and (ii) Susan shall first offer all such |
| 2 | investment opportunities to the parties together through |
| 3 | QRI LLC, and if declined by Patrick, then Susan shall |
| 4 | have the right to invest her Separate Property, as her |
| 5 | Separate Property. |

Pauly Decl. ¶ 8, Ex. 3, Attach. A.

QRI's execution of the Option Agreement with Plaintiff appears to be merely one business transaction among many made by QRI on behalf of Patrick and Susan. For example, the assets initially contributed to QRI at its formation include "promote interests" in various real estate development projects. Pauly Decl., Ex. 1, ¶ 8. In March 2007, "QRI received approximately $20,000,000 from a project in Snowmass, Colorado." Pauly Decl., Ex. 1, ¶ 9. And "[a]pproximately $5 million (of those funds) was reinvested on behalf of QRI, LLC." Pauly Decl. Ex. 2, ¶ 12. Further, Patrick "has been a real estate developer for approximately 35 years. By his own admission, he has entered into hundreds of deals and has formed dozens and dozens of business entities under which he conducts business." Pauly Decl. ¶ Ex. 2, ¶ 11. Both Patrick and Susan were shareholders in QRI and both apparently attended QRI shareholder meetings with their respective attorneys. Def.'s Request for Judicial Notice, Ex. 8 at 68, Ex. 11 at 117.

Plaintiff has sufficiently established that the claim against Patrick and Susan "arises out of conduct of a trade, business or profession." Cal. Code Civ. Proc. § 483.010(c). Under the test articulated in *Advance Transformer*, Plaintiff has shown that Patrick and Susan have "extensively occupied [themselves] in the management of the primary obligor [QRI] on a continuing basis and ha[ve] a major stake in its success." 44 Cal.App.3d at 144.

**B.   The Claim is Based Upon Patrick and Susan Smith's Personal Guaranty of QRI's Option to Purchase the Premises, Not the Smiths' Use of Property for Personal, Financial, or Household Purposes**

Patrick and Susan also argue that attachment against them is specifically prohibited under the statute because Plaintiff's claim arises from "the sale, lease or license to use property" which was used by Patrick and Susan "primarily for personal, family or household purposes" under California Code of Civil Procedure § 483.010(c). Def.'s Opp., Mem. of P & A. at 6. *See also Medford v. Super. Ct.*, 140 Cal.App.3d 236, 239 (1983)(holding that attachment against residential tenants is prohibited under Cal. Code Civ. Proc. § 483.010(c)). They contend that Plaintiff's claim is based upon their lease of Plaintiff's private residence, which they used as their home during the term of the lease. The declarations provided by Patrick and Susan state that they used the Premises as their personal residence while their primary residence in Santa Barbara was being remodeled. Patrick Decl. ¶¶ 4-7; Susan Decl. ¶ 5. The declarations state that Patrick and Susan ate, slept, hosted family gatherings in the premises. *Id.*

However, it is immaterial whether Patrick and Susan used the Premises "primarily for personal, family or household purposes" because it was the business entity, QRI, not the Smiths personally, that entered into the lease and Option Agreement with Plaintiff. Patrick and Susan Smith were merely guarantors of QRI's obligation to make two $1 million payments under the terms of the Option Agreement. Therefore, section 483.010(c) is inapplicable here because QRI is not a natural person. Because Defendants chose to have their marital affairs governed by business law, rather than family law, and chose to

have the lease and Option Agreement executed by QRI, they now must live with the consequences of that decision. Any liability they might have in this action arises from a breach of the guaranty obligation, not the sale or lease of property, and their assets are subject to a writ of attachment.

### C. Plaintiff Has Established the Probable Validity of the Claim

In order to secure an attachment, Plaintiff must establish the probable validity of the claim upon which the attachment is based. Cal. Code Civ. Proc. § 484.090(a). Through uncontroverted declarations, Plaintiff has established that QRI breached the Option Agreement by failing to make the second $1 million payment due by May 1, 2009 under the express terms of the contract. Patrick and Susan Smith guarantied QRI's obligations under the Option Agreement, but also failed to make the second $1 million payment by May 1, 2009. Therefore, Plaintiff has proven the probable validity of her claim against Defendants.

### D. Plaintiff Has Sufficiently Established the Amount to Be Attached

Through uncontradicted declarations, Plaintiff has established that she is entitled to $1 million for the second payment under the Option Agreement. Plaintiff is also entitled to recover interest on the contract claim from the date the claim arose through the date of judgment. Cal. Civ. Code § 3287(a); Cal. Code Civ. Proc. § 697.010 (attachment lien is generally for an amount required to satisfy a money judgment). If the interest rate is not specified in the contract, as is the case here, the "legal rate" is 10% per year. Cal. Civ. Code § 3289(b). Plaintiff claims prejudgment interest in the amount of $91,666.67, which represents interest of 10% per year owed

on the principle sum of $1 million from the date the claim arose, May 1, 2009.[5]

### E. Plaintiff's Description of the Property to Be Attached Is "Reasonably Adequate"

The description of the property to be attached must be "reasonably adequate to permit the defendant to identify the property sought to be attached." Cal. Code Civ. Proc. § 484.020(e). The purpose of this requirement is to enable an individual defendant to determine whether to file a claim of exemption. *Bank of America v. Salinas Nissan, Inc.*, 207 Cal.App.3d 260, 268 (1989). An overly inclusive description in the attachment application does not invalidate it. "We do not understand [the requirement of specificity] to prohibit a plaintiff from targeting for attachment everything an individual defendant owns ... [The statute] allows for the possibility that a plaintiff may want to make such a comprehensive attempt, possibly in order to provoke and resolve an individual defendant's exemption claims all at once." *Id.* Accordingly, Plaintiff's general description of Defendants' property contained in the attachment application is "reasonably adequate" to allow Defendants to determine whether to file a claim of exemption, which they have done, as discussed below.

### F. Defendants Have Failed to Adequately Identify the Property for Which They Claim Exemption

Under California law, the following property is exempt from

---

[5] Plaintiff's request for an attachment for attorney's fees in the amount of $250,000 is denied. The evidence submitted by Plaintiff's counsel to support that amount is insufficient. Therefore, the Plaintiff may only attach the $1 million due under the contract plus 10% interest in the amount of $91,666.67 for a total of $1,091,666.67.

11

attachment: (a) all property exempt from enforcement of a money judgment; (b) property which is necessary for the support of a defendant who is a natural person or the family of such defendant supported in whole or in part by the defendant; (c) "earnings" as defined by Cal. Code Civ. Proc. § 706.011; and (d) all property not subject to attachment pursuant to Section 487.010. Cal. Code Civ. Proc. § 487.020. If a defendant claims that property is exempt from attachment, and the plaintiff opposes the claim, as is the case here, the defendant bears the burden of proving that the property is exempt. Cal. Code Civ. Proc. §§ 484.020, 484.070.

Defendants QRI and Patrick Smith claim that *all* of the property sought to be attached by Plaintiff is subject to exemption because it is necessary for Patrick and Susan Smith's support. Def.'s Mem. of P. & A. at 14; Patrick Decl. ¶¶ 18-23. More specifically, Defendants argue that all of the property must be sold to satisfy personal debts and obligations of Patrick and Susan Smith pursuant to the divorce proceedings in Santa Barbara County Superior Court. Patrick Decl. ¶¶ 16, 18, 20-22. Defendants, however, have presented no evidence to support this argument. Nor have Defendants presented a comprehensive and current financial statement that would disclose all of Patrick and Susan Smith's assets, liabilities, income and expenses. *See* Cal. Code Civ. Proc. § 703.530(a) (requiring the filing of a financial statement where the claim of exemption is for property "necessary" for the support of the judgment debtor and his or her spouse and dependents). Therefore, Defendants have failed to present evidence that would enable the Court to determine whether issuing the proposed writ of attachment would leave the Smiths without any means of support.

Similarly, Defendants claim a statutory exemption for various

other items, such as contents of safe-deposit boxes; motor vehicles (Cal. Code Civ. Proc. § 704.010); household furnishings, appliances, provisions and personal effects (Cal. Code Civ. Proc. § 704.020); tools and other personal property used in trade, business, or profession (Cal. Code Civ. Proc. § 704.060); private retirement benefits (Cal. Code Civ. Proc. § 704.115); homestead residence (Cal. Code Civ. Proc. § 704.720); and any other property not subject to enforcement of money judgment (Cal. Code Civ. Proc. § 704.210). However, Defendants have failed to identify with particularity the property sought to be exempted, including a specific description of the property and where this property is located. Accordingly, Defendants Patrick and Susan Smith's claims of exemption are denied without prejudice.

**IV.   ORDER**

Plaintiff has met all of the requirements under California law for issuance of a prejudgment writ of attachment. Accordingly, Plaintiff's application for writ of attachment and right to attach order is hereby **GRANTED** as to Defendants Patrick N. Smith and Susan Smith in the amount of $1,091,666.67.[6] Defendants claims of exemption are denied without prejudice.

Dated: April 28, 2010

_____
Marc L. Goldman
United States Magistrate Judge

---

[6] The parties are directed to meet and confer to determine which of Defendants' property or properties shall be attached in the amount of $1,091,666.67 and may submit a stipulated order to the Court describing the specific property to be subjected to a writ of attachment.

13